IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AARON MCCALL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 2:22-CV-403-WKW |
| | ) [WO] |
| THE COUNTY OF LOWNDES, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Aaron McCall, Karl Bell, and Helenor T. Bell bring this 42 U.S.C § 1983 action against Defendants Lowndes County, Lowndes County Commission (the Commission), Joseph Barganier, Jr., W. Dickson Farrior, Carnell McAlpine, Brent Crenshaw, Robert Harris, Joshua Simmons, and Charlie King, Jr.[1] Plaintiffs allege that Defendants violated the Equal Protection Clause when the Commission brought an earlier lawsuit against them, which Plaintiffs say was racially motivated. Plaintiffs also bring state-law claims for malicious prosecution and abuse of process. Defendants McAlpine and Creshaw filed answers (Doc. # 16; Doc. # 17); however, the other Defendants jointly filed a motion to dismiss (Doc. # 19) under Rule

---

[1] Barganier, Farrior, McAlpine, and Crenshaw are sued in their individual and official capacities. Harris, Simmons, and King are sued solely in their official capacities. All are either present or former commissioners.

12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs have failed to plausibly allege any of the claims because Defendants' previous lawsuit was rational, and because Plaintiffs fail to allege sufficiently similar comparators as necessary to infer discriminatory intent.[2]  For the following reasons, the court will grant Defendants' motion as to Plaintiffs' federal claims on the merits and will decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1367.  The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor."  *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (alteration adopted).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[2] For purposes of this opinion and order, "Defendants" refers to the Defendants who filed the motion to dismiss: the County, the Commission, Bargainer, Simmons, Farrior, Harris, and King.  It does not include McAlpine or Crenshaw, who answered but did not join the motion.  Accordingly, while the motion to dismiss will be granted, and the defendants who joined the motion terminated, this case is not closed.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id.*

### III. BACKGROUND

This is a lawsuit about a lawsuit. The chain of litigation began in Alabama state court, when Defendants sued Plaintiffs to recover wrongfully disbursed public funds. Defendants won at trial, but Plaintiffs ultimately prevailed on appeal and the case was dismissed. Now, two years later, Plaintiffs have brought this suit against Defendants, seeking emotional damages and attorneys' fees, alleging that Defendants discriminatorily, maliciously, and abusively brought the initial lawsuit against them in violation of federal and state laws.

The story begins over a decade ago, in Lowndes County, Alabama. In anticipation of a federal grant, the Lowndes County Commission sought to buy a building from a local LLC (the LLC).[3] *See McCall v. Lowndes Cnty. Comm'n*, 315

---

[3] For clarity's sake, and in line with the Federal Rules of Evidence, the court takes judicial notice of many of the facts relayed in the related Alabama Civil Court of Appeals' opinion, which came after the case had been tried by a jury. *McCall v. Lowndes Cnty. Comm'n*, 315 So. 3d 1119, 1126 (Ala. Civ. App. 2020), *cert. denied* (July 10, 2020). That opinion ruled in favor of Plaintiffs, and Plaintiffs have not raised any protestations, challenges, or disputes to the veracity or authenticity of the facts therein. And this is so despite Defendants' reliance on many of these facts in their responsive briefing. Indeed, Plaintiffs praise the appellate opinion throughout their

So. 3d 1119, 1121 (Ala. Civ. App. 2020), *cert. denied* (July 10, 2020). The building cost roughly three million dollars, which was to be paid from the proceeds of a bond that was to be issued by the Commission. *Id.* The Commission estimated that it needed a $500,000 loan from the seller to pay the debt on the bond for two years. *Id.* The Commission sought this loan, and Karl Bell, the sole managing member of the LLC selling the building, orally agreed to put $500,000 of the building's three-million-dollar sale price in escrow that the Commission could use to service the bond debt. *Id.* This oral loan agreement called for the $500,000 to be repaid at an interest rate to be determined. *Id.*

The bond was eventually sold, and the Commission—at the instruction of then-Chairman Charlie King—released approximately three million dollars to the

---

Complaint, and therefore have, to some extent, implicitly incorporated by reference the appellate opinion's facts in their Complaint. (Doc. # 1 at 7.)

Accordingly, under these unique circumstances, the court finds that the facts in the prior opinion are not "subject to reasonable dispute," as required to take judicial notice of facts not in the operative Complaint. Fed. R. Evid. 201. However, the court notes that the Eleventh Circuit has held that courts should rarely notice the factual findings of a prior opinion *as* facts (as opposed to noticing that those were, indeed, the factual findings of the other court), at least for cases when those facts are actively being disputed by the parties. *See Grayson v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1204, 1225 (11th Cir. 2017) (noting that instances where a factual finding from another court could satisfy Rule 201's indisputability requirement for judicial notice would be "rare," but not impossible). Here, however, the factual findings of the other court are not in dispute, and therefore may fall under the umbrella of judicially noticeable facts per Federal Rule of Evidence 201. Nonetheless, in an abundance of caution, the court notes that the outcome of this case would be the same had it not noticed the undisputed facts of the appellate opinion in an effort to fill in factual detail otherwise absent from the Complaint. This is so because the dispositive comparator analysis conducted below hinges upon the Complaint's factual allegations. That is, the Complaint itself does not allege sufficiently similar comparators so as to plausibly infer discrimination.

LLC as payment for the building. *Id.* at 1122. Following that payment, Helenor Bell, Bell's wife and the only other member of the LLC, made two large withdrawals from the LLC's business account. *Id.* Additionally, Aaron McCall and Robert Woods, who both assisted Bell in negotiating the sale of the building, received significant funds from the sale for their respective roles as negotiators. *Id.*

Bell then delivered a $500,000 check to the Commission per the oral, escrow loan agreement. *Id.* But the check bounced due to insufficient funds. *Id.* Nonetheless, the Commission subsequently received the deed for the building and began occupying it. *Id.* However, the federal grant the Commission was anticipating did not come to fruition. *Id.* In short, the Commission bought a three million dollar building in anticipation of a federal grant and in reliance on an oral agreement from the building's seller for a $500,000 loan to cover its bond debts for several years. The federal grant did not come through, and Bell's $500,000 loan never came through, leaving the Commission with ownership of the building and all the debt on the bond used to purchase the building.

Then, in 2013, the Commission brought a breach of contract claim against the LLC, alleging that the contract for the sale of the building included an enforceable condition requiring Karl Bell, the LLC's sole managing member, to put $500,000 in escrow so that the Commission could service its bond debts. *Id.* The Commission alleged that this condition was breached and sought damages. *Id.* Collaterally to

5

the breach of contract claim, the Commission brought "recovery of public moneys" claims under Alabama Code § 6-5-4 against Karl Bell, Helenor Bell, and McCall, among others, including Robert Woods and Charlie King—the commissioner who released the three million dollars. Alabama Code § 6-5-4 provides a civil cause of action for "recovery of public moneys . . . which have been *wrongfully* received from [a public officer]." (emphasis added).

Plaintiffs allege that the Commission only brought claims to recover wrongfully disbursed funds resulting from the sale of the building against black-owned entities or black people—like the Bells and McCall. For example, a non-black owned local bank that held a lien on the building was not sued; the Alabama Power Company, which was tendered a check from the LLC's bank account that emanated from the sale of the building, was not sued; the IRS was not sued; and local utilities that serviced Bell's LLC, and that were paid for those services, were not sued. (Doc. # 1 at 10.) While the Commission did not sue every party that ultimately received money from the proceeds of the building, like the utility companies which received payment for services from the sale-proceeds, the Commission did attempt to recover from all the people who were directly involved in the negotiations of the contract or who were members of the LLC; that is, people the Commission alleged in its amended state-court complaint had, in various ways, *wrongfully* received the disbursed funds.

The case proceeded to trial in early 2019. *McCall*, 315 So. 3d at 1123. At the conclusion of the evidence, the jury returned a verdict in favor of the Commission on the breach of contract claim against the LLC and against Karl Bell, Helenor Bell, and McCall on the recovery of public moneys claims. *Id.* Karl Bell was assessed $25,000 in damages; Helenor Bell was assessed $13,177; and McCall was hit for $12,000. *Id.*

The Bells and McCall appealed and, on May 14, 2020, won a reversal at the Alabama Court of Civil Appeals. *Id.* The appellate court found that there was no breach of contract based on the failure to provide the $500,000 because the $500,000 loan agreement was a separate contract from the sale of land contract, and it was a contract made in violation of Alabama's Statute of Frauds, which voids loan agreements over $25,000 that are not in writing. *Id.* at 1126. And no breach of contract means no wrongfully disbursed money to collect. *Id.* ("[T]he Commission cannot maintain a claim under § 6-5-4 for alleged wrongful conduct arising out of a loan agreement that is void under the Statute of Frauds."). The Bells and McCall were off the hook that the jury put them on. Nonetheless, they incurred legal fees in defending the Commission's suit, and they suffered emotional and reputational harm. (Doc. # 1 at 9–10.)

Thereafter, the Bells and McCall brought this action against the County, the Commission, and several of the Commissioners, alleging equal protection claims

7

under 42 U.S.C. § 1983, and Alabama-law malicious prosecution and abuse-of-process claims.

## IV. DISCUSSION

Plaintiffs bring federal claims under the Equal Protection Clause and two tort claims under Alabama law. (Doc. # 1.) For the following reasons, the federal claims will be dismissed with prejudice for failing to plausibly state a claim. The court declines to exercise supplemental jurisdiction over the remaining state-law claims, and they will be dismissed without prejudice.

### A. <u>42 U.S.C. § 1983 Equal Protection Claim</u>

In the complaint, Plaintiffs claim that Defendants violated the Equal Protection Clause because the Commission sued Plaintiffs for recovery of public moneys because Plaintiffs are black. While Plaintiffs allege that Defendants sued them because of their race, neither Plaintiffs' pleadings nor their briefings advance a class-based theory challenging a discriminatory law. Rather, Plaintiffs advance, and Defendants respond to, a "selective enforcement" equal protection claim. That is, Plaintiffs argue that Defendants discriminatorily singled them out to selectively enforce Alabama's facially valid recovery-of-public-moneys statute, Alabama Code § 6-5-4.[4] Defendants argue that Plaintiffs have failed to allege sufficiently similar

---

[4] Plaintiffs do not bring a "class-based" argument because the recovery of public moneys enforcement statute is a general, neutrally applicable enforcement law that gives government officials the power to sue private persons to recover wrongfully disbursed money. Plaintiffs' race

8

comparators necessary to infer discrimination and that Plaintiffs have failed to plausibly allege that Defendants lacked a rational, equal basis for bringing the original suit.  For the following reasons, Defendants' motion to dismiss will be granted.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike," *City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), and it provides individuals the "right to be free from intentional discrimination at the hands of government officials."  *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).  Individuals generally have no right to have a law go unenforced against them simply because others equally or more culpable than them have gone unpunished.  *Lozman v. City of Riviera Beach,* 39 F. Supp. 3d 1392, 1416 (S.D. Fla. 2014).  However, sometimes the enforcement of an otherwise valid law can be a means of violating constitutional rights if the enforcement was brought arbitrarily or on the basis of invidious discrimination. Claims of this sort fall under the "selective enforcement" doctrine of the Equal Protection Clause.  *Campbell*, 434 F.3d at 1314 (citing *Strickland v. Alderman*, 74

---

then is not the analytical "class."  Rather, the relevant "class" here is the defendants to the Commission's original recovery of public moneys claims.  Accordingly, the "selective enforcement" and "class of one" frameworks apply.  Of course, however, *if* the Commission's original claims were brought *because* of Plaintiffs' race, then that would be an irrational reason for initiating suit and violative of the Equal Protection Clause.  In sum, Plaintiffs do not bring "class-based" race-discrimination claims, but a traditional, "selective enforcement claim" that the Commission *applied* a valid law wrongfully as to them based on race.  *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (2006).

F.3d 260, 264 (11th Cir. 1996)); *see also Lozman*, 39 F. Supp. 3d at 1416; *Whren v. United States*, 517 U.S. 806, 813 (1996) (The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race.").

Typically, a selective enforcement claim arises as a defense in a criminal prosecution or regulatory enforcement action. In that context, the defendant establishes an equal protection violation if he can prove that the government intentionally singled him out for enforcement because of his membership in a protected group. "Thus, a claimant alleging selective enforcement based on discriminatory animus must show that [the government's action] . . . was motivated by a discriminatory purpose." *Lozman*, 39 F. Supp. 3d at 1416 (citing *Wayte v. United States*, 470 U.S. 598 (1985)).

Here, to prevail on their selective enforcement claims (that the Commission discriminatorily sued Plaintiffs under § 6-5-4, and not other persons, because of Plaintiffs' race), Plaintiffs must show "(1) that they were [intentionally] treated differently from other similarly situated individuals, and (2) that Defendant[s] unequally applied a facially neutral [statute] for the purpose of discriminating against Plaintiffs." *Campbell*, 434 F.3d at 1314 (citing *Strickland*, 74 F.3d at 264).[5]

---

[5] Alternatively, there is a secondary "selective enforcement" theory known as the "class of one" selective enforcement theory. Under the "class of one" framework, a claim may arise from differential treatment based on a *non-suspect* characteristic. Under this framework, a plaintiff must demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Campbell*, 434 F.3d at 1306 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Because

The similarly situated requirement is applied "with rigor." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). The people or entities being compared "must be *prima facie* identical in all relevant respects." *PBT Real Est.*, 988 F.3d at 1285 (emphasis omitted). A plaintiff must ultimately show that he and any comparators are "similarly situated 'in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker.'" *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Griffin Indus.*, 496 F.3d at 1207).

Applying this framework, Plaintiffs do not sufficiently allege similarly situated comparators necessary to plausibly infer racial discrimination based on circumstantial evidence. For comparators, Plaintiffs point to the Internal Revenue Service (IRS), the Alabama Power Company (Alabama's regulated electrical power utility), a local non-black bank, and other local utilities—all of which allegedly ended up receiving funds from the sale of the building, but which did not get sued by the Commission. But, unlike Plaintiffs, none of Plaintiffs' comparators are alleged to have been remotely, let alone intimately, connected to the negotiations for the sale of the building or to Bell's secondary $500,000 loan agreement, or to have

---

Plaintiffs allege that Defendants selectively enforced a neutral statute against them based on race, a protected class, the following analysis will focus on the "traditional" selective enforcement test as articulated in *Campbell*, instead of the "class of one" rational basis test. 434 F.3d at 1314. Nonetheless, Plaintiffs claims would also fail under the "class of one" test for the same reason as the traditional test: failing to allege sufficiently similar comparators.

11

been a member of the LLC that sold the building. That is, Plaintiffs' comparators, unlike Plaintiffs, are not alleged to have engaged in what the Commission considered the "wrongful" conduct (the breach of contract) so as to have potentially been captured in the purview of Alabama's wrongful disbursement statute.[6] Under Plaintiffs' theory, every party that received money that can somehow be traced back to the sale of the building—regardless of how that party came into the money—is similarly situated to Plaintiffs. That is not the case because *how* a party received the money is not only a relevant factor to a "reasonable government decisionmaker" in Defendants' shoes, *Douglas*, 541 F.3d at 1275, but it is also an *element* of Alabama's recovery of public moneys claim (*i.e.*, only wrongfully received moneys fall under § 6-5-4). Accordingly, Plaintiffs needed to allege comparators that received money from the sale of the building under similar circumstances that Plaintiffs received it.

For example, had Plaintiffs alleged that a non-black person participated in the contract negotiations, and that that non-black negotiator was not sued, then Plaintiffs

---

[6] The IRS, the Alabama Power Company, and local utilities are also dissimilar comparators because, unlike Plaintiffs, they are governmental or quasi-governmental entities. Additionally, while Plaintiff alleges that these entities are "non-black," Plaintiffs do not factually detail why these entities should be racially classified as such (*i.e.*, ownership information, employee statistics, *etc.*), nor do Plaintiffs cite clearly established law holding that entities can be racially classified as being representative of one race when the entity employs people of many races. Finally, Plaintiffs do not allege that the Commission knew that the other entities, like the Alabama Power Company, were paid with money from the sale of the building. And, it goes without saying, two parties cannot be sufficiently similar if the governmental decisionmaker is unaware of one of them.

would have possibly alleged a comparator who was similarly situated "in all relevant aspects." *PBT Real Est.*, 988 F.3d at 1285. Similarly, had Plaintiffs alleged that a non-black person was a member of the LLC, yet was not sued, then perhaps that would have been a sufficient comparator allegation. But Plaintiffs did not make such allegations. Rather, Plaintiffs alleged unrelated government entities, utility monopolies, lienholders, and local utilities as comparators because these entities ultimately received money that came from the sale (like payment from the LLC for utility-services rendered or tax payments). But none of these comparators is alleged to have been in the contract negotiations or to have been members of the LLC that sold the building. Accordingly, Plaintiffs fail to allege comparators that are similarly situated "in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker" who is deciding when, and against whom, to bring a recovery of public moneys action.[7] *Douglas*, 541 F.3d at 1275 (quoting *Griffin Indus.*, 496 F.3d at 1207 (noting that the similarly situated requirement is applied "with rigor")). Therefore, Plaintiffs fail to plausibly allege that the suit was brought based upon "illegitimate animus" or "invidious discrimination," and their traditional selective enforcement claims fails. *United States v. Moore*, 543 F.3d 891, 898 (7th Cir. 2008).

---

[7] Alternatively, the purported comparators are insufficiently dissimilar to Plaintiffs because they are all *entities* as opposed to *persons*, like Plaintiffs. And insofar as the court can discern from the record, these entities bear no racial identity.

To the extent that Plaintiffs assert a class-of-one equal protection theory based solely upon purported irrationality, rather than racial discrimination, this too fails because Plaintiffs do not plausibly allege that the Commission lacked a rational basis for bring suit. The trial court's conclusion that the Commission brought a meritorious suit, the jury's verdict in favor of the Commission, and the appellate court's silence as to the motivation (wrongful or otherwise) of the Commission's suit, establish that the Commission had a rational basis to bring the suit, even though its claims were ultimately kicked on Statute of Frauds grounds. Indeed, despite being relevant to their defense (or a potentially compulsory counterclaim),[8] Plaintiffs never raised equal protection, malicious prosecution, or discrimination arguments while defending the initial suit. The alleged impropriety and unconstitutionality of the Commission's actions were only called into doubt after the appellate court reversed on a technical matter of law. Accordingly, a view of the Commission's actions reveals that it had a rational basis for suing the Plaintiffs—albeit a legally unavailing one under Alabama contract law—and not other entities or persons that may have ultimately received money from the sale of the land. *See generally Wayte*, 470 U.S. at 608 (explaining that, in government enforcement

---

[8] Alabama Rule of Civil Procedure 13 provides that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Failure to assert compulsory counterclaims can result in collateral estoppel of those claims. *Id.*

actions, courts are to be "properly hesitant to examine the decision whether to prosecute."). Plaintiffs' equal protection claims will be dismissed against all Defendants.[9]

**B.** <u>**State Law Claims**</u>

Having dismissed the only federal claim brought in this action, the court declines to exercise supplemental jurisdiction over the two state-law claims (malicious prosecution and abuse of process) brought in the Complaint. 28 U.S.C. § 1367(c)(3).

### V. CONCLUSION

Accordingly, it is ORDERED that Defendants' motion to dismiss (Doc. # 19) is GRANTED. The equal protection claims are dismissed with prejudice. The state-law claims are dismissed without prejudice.

This action proceeds against Defendants Carnell McAlpine and Brent Crenshaw.

---

[9] The individual Defendants also invoke qualified immunity. Because Plaintiffs have failed to plausibly allege a constitutional violation, the individual Defendants are entitled to qualified immunity. Alternatively, the individual Defendants are entitled to qualified immunity because Plaintiffs have failed to show, through binding caselaw or legal principles of obvious application, that it was clearly established at the time of the alleged violation, that all persons and entities that ultimately receive money stemming from a sale, regardless of their involvement in/relationship with the sale itself, are similarly situated for purposes of inferring discriminatory intent. *See Griffin Indus.*, 496 F.3d at 1199 ("Only when the official violated the law and the illegality of his conduct was clearly established must the court deny him the protection of qualified immunity.").

DONE this 9th day of January, 2023.

                                                  /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE